UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NANCY J. NIGRO,

                            Plaintiff,

v.                                                                            6:12-CV-1629
                                                                                 (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

NANCY J. NIGRO
  Plaintiff, *Pro Se*
415 North George Street
Rome, NY 13440

U.S. SOCIAL SECURITY ADMIN.           SIXTINA FERNANDEZ, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

       Currently before the Court, in this Social Security action filed by Nancy J. Nigro ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g) are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 20, 22.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

I.     **RELEVANT BACKGROUND**

    A.     **Factual Background**

Plaintiff was born on February 14, 1960. She completed regular education through high school and completed three years of college, but did not receive a degree. Plaintiff has work experience as a telephone operator. Generally, Plaintiff's alleged impairments consist of fibromyalgia, right knee osteoarthritis, obesity, degenerative disc disease, hypothyroidism, hypolipidemia, diabetes, depressive disorder, hepatitis C, and polysubstance dependence in full remission. Plaintiff's alleged disability onset date is June 4, 1999 and her date last insured is December 31, 2003.

    B.     **Procedural History**

On December 16, 2002, Plaintiff applied for Social Security Disability Insurance.[1] Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 24, 2004, Plaintiff appeared before ALJ, Brian Kilbane, in Utica, New York. (T. 59-79.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on May 28, 2004. (T. 532-543.) On August 18, 2004, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 569-571.) Thereafter, Plaintiff timely sought judicial review in this Court. *See Nigro v. Comm'r of Soc. Sec.*, 6:04-CV-01162 (LEK/RFT).

---

[1] An earlier application for Social Security Disability Insurance was filed on March 16, 1999. (T. 196-198.) That application was initially denied, after which Plaintiff requested a hearing before an ALJ. The ALJ issued an unfavorable decision on September 7, 2000. (T. 136-151.) Upon review, the Appeals Council remanded the case to the ALJ on November 17, 2001. (T. 181-184.) On July 24, 2002, the ALJ again issued an unfavorable decision, of which Plaintiff did not seek review. (T. 523-531.)

By stipulation of the parties, the action was remanded to the Commissioner for rehearing. (T. 572-573.)

On December 11, 2007, Plaintiff appeared at a hearing in Utica, New York before the ALJ. (T. 80-127.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on September 18, 2008. (T. 25-41.) On May 1, 2010, the Appeals Council denied jurisdiction of Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 14-16.) Thereafter, Plaintiff timely sought judicial review in this Court. *See Nigro v. Comm'r of Soc. Sec.*, 6:10-CV-00780 (LEK/RFT). By stipulation of the parties, the action was remanded to the Commissioner for further administrative action. (*See id.*, Dkt. No. 18.) On June 22, 2011, the Appeals Council remanded the action to the ALJ for a supplemental hearing to clarify the onset date and re-adjudicate the entire period at issue. (T. 1045-1048.)

On September 16, 2011, the ALJ issued Plaintiff a Notice of Hearing, after which both Plaintiff and her counsel issued signed receipts indicating their intention to appear at the hearing. (T. 1062-1077.) On November 28, 2011, Plaintiff's counsel notified the ALJ of Plaintiff's waiver of her right to appear at a hearing. (T. 1100.) Plaintiff's signed waiver indicates that she "already testified on multiple occasions regarding the period of time at issue [and she] ha[s] no further information to give." (T. 1078.) Plaintiff also amended her alleged onset date to June 4, 1999. (T. 1103.)

The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on February 9, 2012. (T. 1008-1027.) On September 8, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the

Commissioner. (T. 1001-1003.) Thereafter, Plaintiff, now appearing *pro se*, timely sought judicial review in this Court.[2]

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 1014-1026.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her amended alleged onset date of June 4, 1999 through her date last insured of December 31, 2003. (T. 1014.) Second, the ALJ found that Plaintiff's fibromyalgia, right knee osteoarthritis and obesity were severe impairments but that her back difficulties, hepatitis C, hypothyroidism, hypolipidemia, diabetes, polysubstance dependence (reported in remission), and depressive disorder are not severe. (T. 1014-1018.) Third, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 1018.) The ALJ considered listing 1.02. (*Id*.) Fourth, the ALJ found that, through the date last insured, Plaintiff

> had the residual functional capacity [("RFC")] to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk 2 hours in an 8-hour day, and sit 6 hours in an 8-hour day. However, [Plaintiff] could not kneel, bend, squat, or repetitively push/pull with her right lower extremity. [Plaintiff] had the ability to understand, remember, perform, and learn simple and many more complex tasks, maintain attention and concentration, and work in a low stress environment defined as occasional changes in the work setting.

(T. 1018-1025.) Fifth, the ALJ concluded that Plaintiff was unable to perform her past relevant

---

[2] Although Plaintiff's brief in support of her motion for judgment on the pleadings indicates that she "has found a representative who is in the process of applying for admission to the Court," to date, no attorney has appeared on Plaintiff's behalf. (Dkt. No. 20, at 8 [Pl.'s Mem. of Law].)

4

work. (T. 1025.) Sixth, and finally, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed, and therefore, she is not disabled under the Social Security Act. (T. 1025-1026.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes five arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in failing to apply the proper weight given to the opinions of her treating and non-treating physicians. (Dkt. No. 20 at 3[Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in failing to find that her depression was a severe impairment. (*Id*. at 3-4.) Third, Plaintiff argues that the ALJ failed to include all of her limitations in the hypothetical posed to the vocational expert, and therefore, the expert's opinion is not reliable. (*Id*. at 4-5.) Fourth, Plaintiff argues that the ALJ failed to properly assess her credibility. (*Id*. at 5-7.) Fifth, and finally, Plaintiff argues that she should receive another hearing because her attorney improperly advised her to waive her right to a hearing. (*Id.* at 8.)

### B.     Defendant's Arguments

In response, Defendant first argues that substantial evidence supports the ALJ's conclusion that Plaintiff did not have a severe mental impairment during the relevant period. (Dkt. No. 22 at 6-11 [Def.'s Mem. of Law].) Second, Defendant argues that substantial evidence supports the ALJ's RFC finding, including the ALJ's assessment of Plaintiff's credibility. (*Id.* at 11-15.) Third, Defendant argues that the ALJ's decision that there are jobs in the national economy that Plaintiff could perform is supported by substantial evidence. (*Id.* at 15-18.)

Fourth, and finally, Defendant argues that Plaintiff is not entitled to an opportunity for another hearing.  (*Id.* at 18-20.)

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed

>impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.  ANALYSIS

### A.  Whether the ALJ Erred in Failing to Find That Plaintiff's Depression Was a Severe Impairment

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Defendant's memorandum of law. (Dkt. No. 22 at 6-11 [Def.'s Mem. of Law].) The Court would add the following analysis.

According to Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The standard for a finding of severity under the second step of the sequential analysis has been found to be de minimis, and is intended only to screen out the truly weakest of cases. *Davis v. Colvin*, No. 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995). At step two, the claimant bears the burden to provide medical evidence demonstrating the severity of her condition. *See* 20 C.F.R. § 404.1512(a); *Bowen*, 482 U.S. at 146.

Plaintiff argues that her depression has more than a minimal effect on her ability to work, citing her own testimony regarding her symptoms, regular psychiatric treatment, medications for depression, and the side effects of those medications. However, the analysis does not end there.

8

When applying the "special technique" used to determine whether an impairment is severe, the ALJ must first decide whether the claimant has a medically determinable impairment.  After that threshold is met, the ALJ must then evaluate the rate of functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  *See* 20 C.F.R. § 404.1520a(c)(3); *Baszto v. Astrue*, 700 F. Supp. 2d 242, 247 (N.D.N.Y. 2010).  Each of the first three areas is rated on a scale of "[n]one, mild, moderate, marked, and extreme."  20 C.F.R. § 404.1520a(c)(4). The fourth area is rated on a scale of "[n]one, one or two, three, four or more."  *Id.*  "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits."  *Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265, 266 (2d Cir. 2008)).

Here, the ALJ concluded that Plaintiff has no more than mild limitations in (1) activities of daily living, (2) social functioning and (3) concentration, persistence, or pace.  (T. 1016-1017.) The ALJ further concluded that Plaintiff experienced no episodes of decompensation of extended duration. ( *Id.*, at 1017.)  A review of the ALJ's decision and the record reveals that substantial evidence supports his conclusions in this regard.

Moreover, where "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis."  *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010).  *See also* 20 C.F.R. § 404.1523 (ALJ is required to

9

consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). Here, to be sure, the ALJ did not deny benefits based on the lack of a severe impairment. Further, the ALJ clearly considered Plaintiff's depression in the remainder of his decision. Therefore, since the ALJ was required to considered all of Plaintiff's impairments after step two of the sequential analysis, even those that are not severe, *see* 20 C.F.R. § 404.1523, any error associated with the ALJ's finding that Plaintiff's depression is not severe was harmless. *See Ellis v. Comm'r of Soc. Sec.*, No. 11-CV-2305, 2012 WL 5464632, at *5 (N.D.N.Y. Sept. 7, 2012).

      **B.**    **Whether the ALJ Properly Weighed the Opinion of Plaintiff's Treating and Non-Treating Physicians**

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Defendant's memorandum of law. (Dkt. No. 22 at 11-15 [Def.'s Mem. of Law].) The Court would only add the following analysis.

Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*,

10

221 F.3d 126, 134 (2d Cir.2000).  Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion.  *See Shaw*, 221 F.3d at 134.

Unless controlling weight is given to the opinion of a treating physician, an ALJ's failure to explain the weight given to the opinion of other treating sources or a State agency medical consultant is legal error.  *See Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y. 2006) (citing 20 C.F.R. § 404.1527(c), (e)).  *See also Stytzer v. Astrue*, No. 07-CV-811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency].") (quoting  20 C.F.R. § 416.927); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y. 2006) (in light of the fact that the ALJ failed to afford the treating physician's opinion controlling weight, the opinion of the consultative examiner "takes on particular significance").

Plaintiff argues that the ALJ's mental RFC is at odds with the opinions of several of her doctors, which the ALJ cited but improperly gave little weight.  Specifically, Plaintiff cites the opinions of her treating psychiatrist, Firooz N. Tabrizi., M.D., her treating family practice physician, Richard Kaskiw, M.D., and consultative examiner, Dennis Noia, Ph.D.

      **1.**     **Dr. Tabrizi**

The ALJ cited several of Dr. Tabrizi's opinions regarding Plaintiff's abilities and limitations.  (T. 1022-1024.)  First, Dr. Tabrizi opines, in response to a form request by

Plaintiff's long-term disability insurance carrier, that, as of December 27, 1997, Plaintiff is depressed, cannot work, and has significant loss of psychological, physiological, personal and social adjustment. (T. 417-418.) As of July 10, 1998, Dr. Tabrizi informed Plaintiff's insurance carrier that she is anxious and depressed, cannot work, and is unable to engage in stress situations and engage in interpersonal relations. (T. 415-416.) To be sure, these opinions are rendered well before Plaintiff's amended onset date of June 4, 1999.

Next, in a report dated May 5, 1999, just prior to Plaintiff's onset date, Dr. Tabrizi repeatedly notes that Plaintiff cannot work and that she is tense, anxious, depressed and under much stress, but also notes that she speaks coherently and relevantly, is not suicidal, is well-oriented and is in good contact with reality. (T. 303-304.) Treatment notes from January through April 2002, to the extent legible, indicate that Plaintiff is tense, anxious and depressed, but that she is not suicidal and is enrolled in college with the hope of earning her B.A. in June 2003. (T. 519-521.) Finally, Dr. Tabrizi's report of May 16, 2002 indicates that Plaintiff is "depressed, however, she speaks coherently. She has no hallucinations, no delusions. She is well oriented, memory good, IQ average." (T. 792-793.)

In another report to Plaintiff's insurance carrier, dated March 22, 2007, well after Plaintiff's date last insured, Dr. Tabrizi opines that Plaintiff is "too anxious and depressed to be able to work." (T. 909-910.) On January 2, 2008, Dr. Tabrizi reiterates this opinion and notes that Plaintiff's abilities to make occupational, performance, and personal/social adjustments are generally poor, but fair in some areas. (T. 926-927.)

The ALJ assigned "minimal" weight to the 1997 and 1998 opinions of Dr. Tabrizi due to his failure to provide a rationale for his conclusions, submit treatment notes to support his

conclusions, or quantify Plaintiff's limitations. The ALJ also correctly noted that Dr. Tabrizi's conclusions about Plaintiff's inability to work are entitled to no weight, given that resolution of the question of whether a claimant is disabled or unable to work is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1). Finally, the ALJ correctly noted that Dr. Tabrizi's 2008 opinion was rendered long after Plaintiff's date last insured, and failed to specify when Plaintiff's limitations began. Accordingly, the ALJ did not fail to follow the treating physician rule when he gave Dr. Tabrizi's opinions less than controlling weight.

### 2. Dr. Kaskiw

Dr. Kaskiw completed a functional assessment form at the request of Plaintiff's long-term disability carrier. In the assessment, Dr. Kaskiw assigns Plaintiff numerical scores for certain types of mental functional capabilities. (T. 911-912.) The ALJ gave no weight to Dr. Kaskiw's assessment of Plaintiff's mental capabilities, correctly noting that Dr. Kaskiw failed to include a definition of the numerical scores and that Dr. Kaskiw is not a mental health specialist. (T. 1023.) Further, even if the definition of the scores could be discerned, the form is undated. Therefore, it is not possible to determine whether the assessment is relevant to Plaintiff's functional abilities at any time after her alleged onset date and before her date last insured. For these reasons, the ALJ did not err in failing to assign controlling weight to Dr. Kaskiw's opinion regarding Plaintiff's mental functioning.

### 3. Dr. Noia

Dr. Noia, consultative examiner, completed a psychological exam of Plaintiff on June 4, 1999. He concluded that Plaintiff "is probably not able to maintain a schedule or regularly attend to a routine without supervision at the present time" and that "[s]he is unable to deal with

the normal stresses of a competitive workplace and at the present time cannot set realistic goals and make independent plans." (T. 353.) The ALJ assigned "limited weight" to these opinions, noting that they are unsupported by Dr. Noia's clinical findings and Plaintiff's daily activities.

On examination, Dr. Noia noted that Plaintiff's "thought processes where coherent and goal directed, with no evidence of delusions, hallucinations or disordered thinking." (T. 352.) Dr. Noia also noted that Plaintiff was oriented, that her attention and concentration were intact, she could do simple calculations and that her memory skills were intact. (*Id.*) Finally, Dr. Noia noted that, on a daily basis, Plaintiff is able to dress, bathe and groom herself, cook and prepare food, do general cleaning and laundry, shop, manage money, drive and use public transportation. (T. 353.) Accordingly, the ALJ did not err in assigning limited weight to Dr. Noia's opinions about Plaintiff's inability to maintain a schedule or deal with stresses in the workplace.

### C.   Whether the ALJ Properly Assessed Plaintiff's Subjective Allegations

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in defendant's memorandum of law. (Dkt. No. 22 at 13-15 [Def.'s Mem. of Law].) The Court would only add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012). "When rejecting subjective complaints, an ALJ must do so

explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.  First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.  Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work.  Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.*

Plaintiff argues that the ALJ improperly discounted her credibility and found that her allegations of pain were not supported by her limited activities.  Defendant counters that the evidence of Plaintiff's daily activities is inconsistent with her allegations of disabling pain.

Here, the ALJ found that Plaintiff's impairments could reasonably be expected to produced the alleged symptoms, but that Plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms were not entirely credible.  (T. 1025.)  In support of his

15

conclusion, the ALJ cites the "vast array" of Plaintiff's activities, including those reported by her in October 1999 and March 2003.  Specifically, in October 1999, Plaintiff reported cooking two to three times per week and shopping by herself three to four times per week; doing most of the chores, including laundry every day and cleaning the house once per week with her daughter's help; visiting her grandmother at a nursing home two to three times per week and visiting her parents and sister three to four times per week; and reading and watching TV daily.  (T. 238-240.)  In March 2003, Plaintiff reported needing no help or reminders to take care of her personal needs and grooming, although she needed reminders to take her medicine.  (T. 655.)  Plaintiff further reported that she was able to go out alone, drive, pay bills, handle a savings account and use a checkbook.  (T. 656-657.)  Plaintiff reported cooking only once per week because it was too stressful and that her mother prepared meals and brought them to her.  (T. 655.)  However, Plaintiff later testified that although her mother prepared her meals, Plaintiff was capable of cooking if she wished.  (T. 100.)

In further support of his conclusion that Plaintiff was not entirely credible, the ALJ cites evidence in the record of Plaintiff attending college classes, Plaintiff's criminal record including crimes of dishonesty, and Dr. Kaskiw's treatment note that Plaintiff was "manipulative and non-compliant" and his question of whether Plaintiff has motives of secondary gain.  (T. 1025, 519, 103, 820.)  Given this evidence, as well as Plaintiff's reported activity level, the ALJ did not err in concluding that Plaintiff's subjective allegations of pain and limitations are not entirely credible.

### D. Whether the ALJ's Determination at Step Five of the Sequential Analysis is Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in defendant's memorandum of law. (Dkt. No. 22 at 15-18 [Def.'s Mem. of Law].) The Court would only add the following analysis.

Here, at step five of the sequential analysis, the ALJ obtained the opinion of a vocational expert in determining whether there are jobs in the national economy that Plaintiff can perform. Plaintiff argues that the hypothetical posed to the vocational expert by the ALJ was not based on substantial evidence, and therefore, the expert's opinion is unreliable. Specifically, Plaintiff argues that the ALJ failed to include the opinions of Drs. Tabrizi, Kaskiw and Noia. In addition, Plaintiff argues that the ALJ failed to include her limitation of overhead reaching pursuant to a 2008 functional capacity exam or Plaintiff's testimony that she needed to elevate her legs throughout the day. Plaintiff also argues that the expert's opinion was unreliable because, on cross-examination, he admitted that he did not know with any degree of certainty the number of jobs that exist in the Mohawk Valley that Plaintiff could perform.

First, to the extent Plaintiff asserts that the ALJ was required to find that there are jobs that exist in the local economy that she can perform, she is mistaken. The law provides that, once Plaintiff proves that she is unable to perform her past work, the burden shifts to the Commissioner to prove "that the [Plaintiff] still retains [and RFC] to perform alternative substantial gainful work which exists in the *national* economy." *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986) (emphasis added). Because, as Defendant points out, the ALJ found that there were jobs that existed in the national economy that Plaintiff could perform, this burden was met.

Second, the Court has determined, as indicated in Point IV.B. of this Decision and Order, that the ALJ did not err in assigning less than controlling weight to the opinions of Drs. Tabrizi and Kaskiw, and limited weight to the opinion of Dr. Noia, it follows that the ALJ was not required to include those opinions in the hypothetical presented to the vocational expert. Likewise, to the extent the Court has determined, as indicated in Point IV.C. of this Decision and Order, that the ALJ did not err in finding that Plaintiff's subjective complaints were less than credible, it follows that he was not required to include her alleged limitation of elevating her legs throughout the day in the hypothetical presented to the vocational expert. Finally, as Defendant correctly points out, the ALJ was not required to include the findings of the 2008 functional capacity assessment in his proposed hypothetical because that evaluation occurred long after Plaintiff's date last insured.

For all of these reasons, the ALJ's finding at step five of the sequential evaluation is supported by substantial evidence.

### E. Whether Plaintiff is Entitled to Another Hearing

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in defendant's memorandum of law. (Dkt. No. 22 at 18-20 [Def.'s Mem. of Law].) The Court would only add the following analysis.

Plaintiff contends that she is entitled to the opportunity for yet another hearing because she was misdirected by her attorney, who gave her improper legal advice to waive her right to testify at a hearing, advice with which she "now disagrees." However, as Defendant points out, over the course of a decade of pursuing her application for disability benefits, Plaintiff has been informed multiple times of her right to appear at a hearing and the importance of doing so. (*See*

T. 169-172, 174-175, 186-189, 584-588, 600-604, 1062-1075.)  Moreover, Plaintiff has appeared at multiple hearings.  (T. 59-79, 80-127, 128-133, 1148-1165, 1166-1188.)  Finally, Plaintiff herself signed a waiver of her right to a personal appearance before an ALJ, explaining in writing that she "already testified on multiple occasions regarding the period of time at issue" and that she has "no further information to give."  (T. 1078.)  The waiver also explained that, should Plaintiff change her mind and wish to appear at a hearing, she should make that request before the ALJ's decision is mailed to her.  Plaintiff's assertions, without any further explanation, that she was "misdirected" by her attorney does not establish good cause for another hearing.  Morever, given the substantial evidence in support of the ALJ's decision and Plaintiff's failure to identify any evidence that she would have provided, had she timely appeared at a hearing, that would have detracted from the ALJ's decision, a further hearing in this matter would be futile.

    **ACCORDINGLY**, it is

    **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 20) is **<u>DENIED</u>**; and it is further

    **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 22) is **<u>GRANTED</u>**; and it is further

    **ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it is further

    **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: January 27, 2014
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge